NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY-K BOWLES BEY,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>DYFS, et al.,<br><br>　　　　　Respondents. | Civil Action No. 12-5296 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge:**

Presently before the Court are two letters by Plaintiff, (ECF No. 7 and 8), in response to the Court's October 19, 2012 Order ("Prior Order"). (ECF No. 4.) Plaintiff is requesting that the Court reopen the case and grant relief sought in Plaintiff's original submission. The Court construes these letters as motions for reconsideration of the Prior Order. For the reasons stated below, the Clerk will be directed to alter the docket sheet by changing the designation "plaintiff" to "petitioner," and "defendants" to "respondents"; the original submission, (ECF No. 1), will be dismissed; and the motions for reconsideration will be denied. The Court will also deny a certificate of appealability.

## I. FACTUAL BACKGROUND

### A. Initial Submission

This matter was commenced upon the Clerk's receipt of a submission which: (a) asserted simultaneous jurisdiction under habeas and non-habeas provisions; and (b) designated "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" as "plaintiff," and named a federal entity,

a state agency, numerous state employees, and a few unidentified private individuals as "defendants." (ECF No. 1 at 1.) The submission arrived accompanied by $5.00. *See id.*

Since the submission hinted in equal measure at both habeas and civil proceedings, the Clerk docketed the submission replicating, as closely as possible, the designations utilized by the drafter. Consequently, the instant matter was categorized as a Section 2254 habeas action because that provision was listed first of the six provisions offered as jurisdictional bases, with "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" designated as "plaintiff" and the juridical and natural persons named as opposing parties designated as "defendants." *See generally* Docket. The submission consisted of 64 pages, with the first 23 pages styled as a habeas pleading and accompanying memorandum, and the remainder presenting two sets of exhibits. (*See* ECF Nos. 1, 1-1 and 1-2.)

### B. Post-Commencement Developments

Upon docketing the above-described submission, the Clerk forwarded "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" a copy of the docket sheet, to apprise her about the index number assigned to this action. The Clerk's mailing was returned as undeliverable. (ECF No. 2.)

Shortly thereafter, the Clerk docketed a motion seeking an extension of time to submit responsive pleadings. That motion was filed by counsel representing a New Jersey Superior Court Judge named as one of "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey's" opposing parties. (ECF No. 3.)

A week later, the Clerk docketed an application from "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey." (ECF No. 4) (executed on October 17, 2012). That application, titled "Affidavit": (1) sought this Court's order directing the Clerk to strike the aforesaid motion;

and (2) requested entry of default judgment in favor of "Allah Azza Wa Jallah Mary Bowles Bey" as to all named defendants. *See id.*

Two days later, "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" executed another letter, (ECF No. 6), elaborating on her application to strike the motion for an extension of time. *See id.* (informing this Court of her belief that a Deputy Attorney General could not have had a basis to seek extension of time, as well as of her belief that such request for an extension of time was "unacceptable").[1]

### C. This Court's Prior Ruling

The Court carefully examined the above-detailed panoply of submissions. That examination suggested that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" was, seemingly an adherent of the "sovereign citizenship"/"redemptionist" movements and, in accordance with her socio-political beliefs, has been executing her submissions by asserting so-called "Marrakush" claims (reduced to so-called "Marrakush" argot) consistently found invalid by the courts in this District and across the nation.[2] *See Abdullah v. New Jersey*, 2012 U.S. Dist. LEXIS 99021 (D.N.J. July 16, 2012) (detailing facial deficiencies of "Marrakush"-style argot and facial invalidity of "Marrakush"-style claims); *Imoore v. Gasbarro*, 2012 U.S. Dist. LEXIS 73114

---

[1] The letter also indicated that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" was recently imprisoned "over lies." (ECF No. 6, at 1.)

[2] The "Marrakush"-style argot is hard to comprehend due to the users' extensive resort to self-made language mixed with legalese utilized incoherently with actual meanings of these terms. The "Marrakush"-style claims derive from the XVIII century Barbary Treaties (and, in particular, from the Treaty with Morocco of 1786), as well as from non-enforceable United Nations proclamations. Such "Marrakush"-style claims, while vastly different in terms of underlying factual predicate, are analogous to each other in asserting frictions with various government entities and maintaining that the litigants are entitled to special treatment/endowed with special rights (and are not subject to the federal and state laws) because the litigants hold private beliefs that they are descendants of Moors, medieval Muslims populating, during IX-XIV centuries, the Iberian Peninsula, Southern Gallia and a few Gibraltar islands.

(D.N.J. May 24, 2012) (same); *Bey v. Stumpf*, 825 F. Supp. 2d 537 (D.N.J. 2011) (same); *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241 (D.N.J. 2011); *Burpee El v. Warden, Fort Dix*, 2010 U.S. Dist. LEXIS 118307 (D.N.J. Nov. 8, 2010) (same); *Estate of Casimir v. New Jersey*, 2009 U.S. Dist. LEXIS 78113 (D.N.J. Aug. 31, 2009) (same); *Marrakush Soc'y v. N.J. State Police*, 2009 U.S. Dist. LEXIS 68057 (D.N.J. July 30, 2009) (same); *accord Monroe v. Beard*, 536 F.3d 198 (3d Cir. 2008) (same); *Cetacean Cmty. v. Bush*, 386 F.3d 1169 (9th Cir. 2004) (same); *El Bey v. United States*, 2009 U.S. Dist. LEXIS 33838 (M.D.N.C. Jan. 26, 2009) (same).

Substantively, it appears that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" commenced the instant matter because her five children had been taken into custody by the New Jersey Division of Youth and Family Services ("DYFS") upon child abuse/neglect charges.[3]

Taking notice of the foregoing, as well as the fact that the Clerk's mailing was returned as undeliverable, the Court issued a memorandum opinion and order reaching a number of preliminary determinations. (ECF No. No. 4.) The Court detailed to "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" that her submissions, executed in "Marrakush"-style argot, were not in compliance with the requirements posed by Rule 8 of the Federal Rules of Civil Procedure.

The Court also noted the possibility that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" intended to commence this action on behalf of her children. Entertaining such possibility, the Court pointed out that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" lacked standing to raise such claims due to her loss of legal custody. In addition,

---

[3] At the time of filing, "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey's" appeared to have lost legal custody of the children, as they were being placed in foster care.

the Court stressed that the custody-dispute claims fell outside this Court's jurisdiction, being barred by the domestic relations exception stripping this Court of subject matter jurisdiction over "cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689 (1992); *accord Schottel v. Kutyba*, 2009 WL 230106 (2d Cir. 2009); *Rabinowitz v State of New York*, 329 F. Supp. 2d 373 (E.D.N.Y. 2004); *see also Donohue v. Pataki*, 28 Fed. App'x 59 (2d Cir. 2002); *Agg v. Flanagan*, 855 F.2d 336, 339 (6th Cir.1988); *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir.1998); *Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir.1992); *Tackett v. Tackett*, 877 F.2d 60 (4th Cir.1989).

However, the Court concluded that it did not need to reach dispositive issues. In light of the Clerk's mailing being returned as undeliverable, the Court found that "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" did not diligently update her current address with the Court as required by Local Civil Rule 10.1(a). Therefore, the Court merely directed the Clerk to administratively terminate this action, but gave "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" 30 days to move to reopen the case. In conjunction with the same, the Court dismissed, as moot, the motion seeking an extension of time to file responsive pleadings. (*See* ECF No. 4.)

### D. The Letters At Bar

Two letters were filed by "Allah Azza Wal Jallah Lord of All the Worlds Mary-K Bowles Bey" following the Court's entry of the above-detailed decision. (ECF Nos. 7 and 8.)

#### 1. *Letter Docketed As Entry No. 7*

The letter docketed as ECF No. 7, titled as an application to reopen, stated that: (1) the person who commenced this matter wished to be referred to as "Mary-K Bowles: Bey," *id. at 1* (colon sign in original), and "Allah Azza Wa Jallah" was her "Lord and The Creator . . . as the

5

Eternal Living Exalted in Might God of All"; but (2) she preceded her own name with "Allah Azza Wa Jallah" in order to convince this Court that the juridical/natural persons named as opposing parties were "attacking [her] family during the holy month of Ramadan." *Id.*[4]

The letter arrived accompanied by what appeared to be "Mary-K Bowles: Bey's" memorandum in support of her original submission. (*See* ECF No. 7-1.) It appears that it was executed with the goal to convey that: (a) "Mary-K Bowles: Bey" (hereinafter "Petitioner") commenced this action as a habeas proceeding under to 28 U.S.C. § 2254; (b) Petitioner is, indeed, an adherent of the "sovereign citizenship"/"redemptionist" movements; (c) her children were, indeed, removed from her custody on the basis of abuse/neglect charges.[5] *See id.* The memorandum closed with a demand for return of the children into her custody within 72 hours, and for this Court's order directing closure of the DYFS proceeding. *See id.* at 5. The memorandum was accompanied by a "Judicial Notice" directing this Court to immediately "affirm" Petitioner's "Affidavit." *See id.* at 6.

### 2. *Letter Docketed As Entry No. 8*

The next letter submitted by Petitioner reads as follows:

> I am writing you to ask why my amended writ of habeas corpus Order has not been signed? . . . I requested a response to my Order within 72 hours . . . and I have received no response. I demand my Order be signed and returned to me immediately. . . . Also if this process is not the proper process in which to handle this matter I authorize you to inform me of the proper process. Mary Bowles: Bey . . . now comes forth to make demands in this formal Affidavit due to the nature of

---

[4] Ramadan is the ninth month in the Islamic calendar. Religious Muslims perceive it as an obligatory period of prayer, charity giving, self-accountability and fasting; the period lasts 29 or 30 days, depending on the visual sightings of the crescent moon. In 2012, in the United States, Ramadan started on July 21 (although the celebration began at sunset of the preceding day) and continued for 30 days, until August 18. *See* http://www.timeanddate.com/holidays/us/ramadan-begins (accessed May 24, 2018).

[5] Petitioner opined that this Court shall entertain her challenges regardless of the absence of a jurisdictional basis.

6

the biasness, and prejudice actions coming from Stephen J. Bernstein JSC, . . . ; summons Chief Judge The Honorable Stuart Rabner of THE SUPERIOR COURTS OF NEW JERSEY known as Respondent(s), here in after. [Petitioner] compels all respondent(s) to take authority, in this matter and assist . . . in successfully removing Stephen J. Bernstein JSC off case FN 07 101 12 willingly or unwillingly without further delay. . . . Also, see exhibits displaying acts of judicial misconduct by Stephen J. Bernstein JSC. . . . Stephen J. Bernstein JSC violated his oath of office. He has shown prejudice in false findings to benefit and maliciously persecute as well as maliciously prosecute [Petitioner] . . . [Petitioner's] written order for Judge Stephen J. Bernstein to recuse himself is rightfully and duly made. He himself waited to attack my family during our holy month of Ramadan while he himself is from Jewish descent and has been threatening me to put my five offspring up for adoption and has even began the unlawful procedures in attempting to carry out his threat. Stephen J. Bernstein . . . is implementing a personal vendetta [and] conspiring with DYFS . . . to falsely argue alleged abuse and neglect charges against [Petitioner]. . . . I doubt he would have used the same use of force on people who devoutly practice the Jewish faith during their Holy Month of Yaum Kipper. . . . [Petitioner] is entitled to, and demands the recusal of Stephen J. Bernstein. . . . [Petitioner] prays that this court will . . . realize that [Petitioner] is well within her rights for demanding such request. . . . [Petitioner] hopes that the courts and [Petitioner] may come to . . . meet peacefully on common ground as a United Front in good faith of the signatures of our forefathers established and in full force, the Oldest Standing Treaty between you The United States of America, and us the Moors of the Moroccan Empire In the Treaty of Peace and Friendship of 1786 signed in Morocco and delivered by Thomas Barclay 1787 to the United States to be signed. Thus, we should be and always shall be in harmony, to my servants with Love, Truth, Peace, Justice and Equality. . . . Executed without the United States explicitly reserving all rights.

(ECF No. 8) (original brackets removed, capitalization and spelling in original).

## II. DISCUSSION

Petitioner's two latest letters verified the inferences that the Court relied on in its Prior Order, that Petitioner: (1) is seeking to restore custody over her children; and (2) instituted this matter as a Section 2254 habeas proceeding.[6] The letters also indicate Petitioner's belief that the child abuse/neglect action currently prosecuted against her violated her rights. In addition, the

---

[6] The Court will refer to the original submission as the "Petition" hereafter.

letters state her demand for recusal of the state judge presiding over the custody and abuse/neglect state actions. The Court will now detail the grounds the Court relies on in dismissing the Petition.

### A. Shortcoming Already Detailed to Petitioner

Petitioner clarified that she commenced this matter as a habeas action to seek release of her children. However, because she has no custodial rights over these children, Petitioner is without standing to prosecute this action. This point was already extensively detailed to Petitioner in the Prior Order and requires no further elaboration.[7]

Since Petitioner's letters clarified that she has commenced this matter as a habeas action, any claims within the submission that can be construed as asserting violations of civil rights (e.g., by what she perceives as malicious prosecution) cannot be raised in this habeas matter, regardless of whether Petitioner is bringing this action on her own, or on behalf of her children. *See Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002) (detailing distinction between habeas and civil rights matters).[8] For these reasons alone, Petitioner's original submission warrants dismissal.

### B. Additional Considerations

In addition, dismissal would be warranted on the following alternative grounds.

#### 1. *Failure to Exhaust State Court Remedies*

Section 2241 petitioners are not statutorily required to exhaust state court remedies, but "an exhaustion requirement has developed through decisional law, applying principles of

---

[7] In addition, as the Court already explained to Petitioner, under the domestic relations exception, the Court is without jurisdiction to issue any form of "custody decree."

[8] Moreover, since Petitioner has not obtained a favorable dismissal in the child abuse/neglect proceedings, her malicious prosecution challenges would necessarily be subject to dismissal as unripe. *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007); *see also Albright v. Oliver*, 510 U.S. 266 (1994).

8

federalism."[9] *Moore v. DeYoung*, 515 F.2d 437, 442 (3d Cir. 1975). Habeas relief is not warranted . . . absent 'special circumstances.'" *Braden v. 30th Judicial Cir. Ct. of Ky.*, 410 U.S. 484, 489 (1973) (quoting *Ex Parte Royall*, 117 U.S. 241, 253 (1886)).

In *Moore*, the Court of Appeals explained that a petition should be dismissed if "[Petitioner] did not exhaust his state court remedies prior to application for federal habeas corpus relief. This issue is still available to [Petitioner] as an affirmative defense at trial and thereafter, on appellate review." *Moore*, 515 F.2d at 445. Thus, in the event Petitioner is challenging the outcome of her child abuse/neglect proceedings, she can raise her federal challenges during those proceedings or at appellate review. As the *Moore* court explained,

> Petitioner . . . will have an opportunity to raise [her] claimed denial of the right . . . during [her] state trial and in any subsequent appellate proceedings in the state courts. Once [she] has exhausted state court remedies, the federal courts will, of course, be open to [her, that is, if she establishes proper standing,] to entertain any petition for habeas corpus relief which may be presented. These procedures amply serve to protect [Petitioner]'s constitutional rights without pre-trial federal intervention in the orderly functioning of state . . . processes.

*Moore*, 515 F.2d at 449; *see also United States v. Castor*, 937 F.2d 293, 296 97 (7th Cir. 1991); *Dickerson v. State of Louisiana*, 816 F.2d 220, 225 27 (5th Cir.), *cert. denied*, 484 U.S. 956 (1987); *Atkins v. State of Michigan*, 644 F.2d 543, 545 47 (6th Cir.), *cert. denied*, 452 U.S. 964 (1981); *Carden v. State of Montana*, 626 F.2d 82 (9th Cir.), *cert. denied*, 449 U.S. 1014 (1980).

Here, Petitioner's state proceedings were still underway at the time of filing, and Petitioner has not informed the Court that such proceedings have concluded. Thus, her claims are subject to

---

[9] Jurisdiction to issue a writ of habeas corpus before a judgment is rendered in a state proceeding lies under the original habeas statute, 28 U.S.C. § 2241(c)(3), not § 2254. Accordingly, the Petition will be analyzed under 28 U.S.C. § 2241(c)(3) and not § 2254.

dismissal because there remains the potential for state court remedies.[10] Accordingly, the Court finds the Petition should be dismissed for failure to exhaust state court remedies.

## 2. *The Abstention Doctrine Bar*

Federal courts are courts of limited jurisdiction. Thus, a federal court shall presume lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The court is obligated to test subject matter jurisdiction *sua sponte*. *See Bracken v. Matgouranis*, 296 F.3d 160, 162 (3d Cir. 2002) ("Court has a continuing obligation to *sua sponte* raise the issue of subject matter jurisdiction"); *see also Morel v. INS*, 144 F.3d 248, 251 n.3 (3d Cir. 1998) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982), as to the observation that "[a] federal court . . . will raise lack of subject matter jurisdiction on its own motion").

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court established "a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). "*Younger* abstention," as the Court's teaching is known, "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." *Evans v. Ct. of Common Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992), *cert. dismissed*, 506 U.S. 1089 (1993). Therefore, federal courts are directed to decline the exercise of jurisdiction when: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford

---

[10] It also appears to the Court that Petitioner's claims do not satisfy the "in-custody" requirement of § 2241, since no statement in Petitioner's multiple filings suggests that she is in custody within the meaning of habeas regime.

10

an adequate opportunity to raise federal claims [if any]." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).

Here, the Petition is subject to dismissal under the *Younger* abstention. The child abuse/neglect proceedings described above, as well as placement of children in foster care, meet each of these three requirements: they are judicial or quasi-judicial in nature, the State of New Jersey and DYFS have a vested interest in resolving these matters, and the state court and agency forum provide Petitioner with ample opportunities to raise her federal claims. Therefore, the Court declines jurisdiction over the Petition in accordance with *Younger*.

### 3. *Judicial Bias Claim*

Petitioner's letters at bar also request this Court to direct recusal of Stephen J. Bernstein, a Superior Court of New Jersey judge presiding over the child abuse/neglect proceedings conducted by the State/DYFS. However, this Court has no power to direct recusal of any state or federal judge. Hence, Petitioner's allegations of judicial bias might have relevance solely for the purposes of determining whether this Court should alter its Section 2241 or *Younger* analyses.

Judicial recusal is required "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" of his/her interest or bias in a case. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). In making this determination, the court must consider how the facts would appear to a "well informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995); *accord Clemens v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 428 F.3d 1175, 1178 (9th Cir. 2005); *Matter of Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

"[B]eliefs or opinions which merit recusal must involve an extrajudicial factor," *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and citation omitted), and the Supreme Court has made it clear that "judicial rulings alone almost never constitute a valid basis" for recusal.[11] *Liteky v. United States*, 510 U.S. 540, 555 (1994). This is true even if the judge consistently made adverse rulings against the party, *see McCalden v. Cal. Library Assoc.*, 955 F.2d 1214, 1224 (9th Cir. 1990), *superseded by rule on other grounds as recognized in Harmston v. City & Cty. of San Francisco*, 627 F.3d 1273 (9th Cir. 2010); *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 877 (10th Cir. 1989), because an adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by the law and facts.[12] *See Crenshaw v. Hodgson*, 24 F. App'x 619, 621 (7th Cir. 2001) (citing *Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994); *Byrne*, 261 F.3d at 1103).

Here, Petitioner's allegations against Judge Bernstein cannot alter this Court's Section 2241 or *Younger* analyses, since these allegations are limited to: (a) Petitioner's deducements that Bernstein must be of Jewish faith and, because of his faith, he must have a personal vendetta against Petitioner, who is Muslin; (b) Petitioner's displeasure with Judge Bernstein's utilization of

---

[11] The reason for this rule is that judicial decisions "in and of themselves can only in the rarest of circumstances evidence the degree of favoritism or antagonism required" to prove bias. *Id.* Consequently, a judge's prior adverse rulings do not provide a party with a basis for arguing that the bias required for recusal under 28 U.S.C. § 455(a) has been established. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001); *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1160 (9th Cir. 1999); *United States v. Arena*, 180 F.3d 380, 398 (2d Cir. 1999), *abrogated on other grounds, Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993).

[12] Finally, it should be noted that, where issues of recusal arise, a judge "has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." *Laird v. Tatum*, 409 U.S. 824, 837 (1972); *see also Clemens*, 428 F.3d at 1179; *Sensley*, 385 F.3d at 598 99; *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995).

a rubber stamp of his signature for the purposes of issuing his orders; and (c) Petitioner's opinion that the orders entered by Judge Bernstein must have been necessarily colored by undue bias simply because these orders were not in Petitioner's favor. (*See* ECF Nos. 1, 7 and 8.) These facts, even if deemed true, cannot establish judicial bias to a well-informed, thoughtful and objective observer. As such, these allegations have no bearing on, nor do they influence, the Court's decision to dismiss the Petition.

### C. Certificate of Appealability

Since Petitioner clarified that she intended to submit an application for habeas relief under Section 2254, the Court must now determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas petition on procedural grounds, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

Here, the Court determined that Petitioner is without standing to raise claims on behalf of her children, and her challenges to the state proceedings are unexhausted. In addition, the Court concluded that Petitioner's submission, if construed as seeking a custody decree or, in alternative, the Court's intervention in her or her children's state proceedings, is barred by both the domestic relations exception and abstention doctrine. Based on the numerous grounds for dismissal, the

Court finds that jurists of reason would not disagree with the Court's dismissal of the Petition, so the Court will not issue a certificate of appealability.

### III. PETITIONER'S LETTERS AS APPLICATIONS FOR RECONSIDERATION

Finally, the Court notes that Petitioner's letters *de facto* challenged the preliminary determinations stated in this Court's prior order. Therefore, for all practical purposes, the letters operate as motions for reconsideration. There are only four grounds upon which a motion for reconsideration may be granted: (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) to revise a decision to conform with an intervening change in prevailing law. *See* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed. 1995); *see also Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). In contrast, mere disagreement with the district court's decision is an inappropriate ground for a motion for reconsideration; such disagreement should be raised through the appellate process. *See Assisted Living Assocs. of Moorestown, L.L.C., v. Moorestown Twp.*, 996 F. Supp. 409, 442 (D.N.J. 1998) (citing *Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), *aff'd*, 37 F.3d 1485 (3d Cir. 1994); *G 69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)); *see also Drysdale v. Woerth*, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001) (a motion for reconsideration may not be used as a means to reargue unsuccessful theories).

Here, Petitioner's letters verified that this Court correctly assessed Petitioner's factual predicate *ab initio*, and correctly determined Petitioner's legal claims. In addition, these letters assert no valid ground for relief, and point to no error the Court may have made. While the Court sympathizes with Petitioner's emotions, the mandate of the Article III judiciary is limited to, and

14

only to, resolution of "Cases" or "Controversies." *See* U.S. Const. Art. III, § 2; *accord Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Court is without power to grant relief for a litigant's meritless claims.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's original submission, (ECF No. 1), is construed as a petition seeking habeas relief, pursuant to Section 2241, and is dismissed. Petitioner's letters, (ECF Nos. 7 and 8), are construed as motions for reconsideration, and are denied. No certificate of appealability will issue for the denial of habeas relief. An appropriate Order accompanies this Opinion.

**Claire C. Cecchi, U.S.D.J.**

Dated: May 25, 2018